## STATE v. MAJOR BENTON.

(Filed 27 November, 1946.)

**1. Rape § 2—**

An indictment for rape must use the words "by force" or their equivalent in describing the manner in which the assault was accomplished. G. S., 14-21.

**2. Indictment § 9—**

In drawing an indictment it is advisable to adhere to the established practice.

**3. Criminal Law § 53f—Charge held for error as containing an expression of opinion by the court on the evidence.**

In this prosecution for rape defendant pleaded insanity and alibi. One of defendant's witnesses stated he would not go so far as to say defendant did not know right from wrong. The State's evidence included testimony of prosecutrix, an alleged confession and testimony of officers in respect thereto, and the court stated the State's contentions at length. The jury having failed to reach a verdict, the court recalled them and instructed them that the evidence was "rather clear" and that it should reach a verdict if possible. The jury shortly thereafter returned a verdict of guilty of the capital crime. *Held:* Under the circumstances the expression that the evidence was "rather clear" must have been understood to have referred to the State's witnesses and not to defendant's, and must be held for error as an expression of opinion by the court upon the weight of the evidence.

**4. Same—**

The court is precluded from expressing an opinion upon the weight or credibility of the evidence either directly or indirectly by manner, form of expression, or method of arraying and presenting the evidence which is calculated to influence the jury, or by the general tone and tenor of the trial.

**5. Same—**

Where defendant pleads insanity and alibi, the repeated use of the phrase in the charge "responsible for his crime" invades the province of the jury. since under the plea of alibi it is for the jury to determine whether the crime was committed by defendant.

**6. Same—**

The manner of stating the contentions of the parties, if indicative of the court's opinion, is within the prohibition of G. S., 1-180, and in the instant case the statement of the State's contentions in regard to the disinterestedness of officers who testified for the State and the weight to be given the testimony of a doctor as an expert witness, together with a later statement that the evidence was "rather clear" *is held* to disclose that the court entertained high regard for such testimony.

**7. Same—**

A misstatement in the charge that defendant's counsel had asked the jury to return a verdict of guilty of an assault with intent to commit

rape instead of one of rape, when not called to the court's attention at the time, ordinarily is no more than a harmless inadvertence, but in the instant case it may have been prejudicial when considered in connection with the charge of the court.

APPEAL by defendant from *Phillips, J.,* at April Term, 1946, of RICHMOND.

Criminal prosecution on indictment charging that the defendant did "with force and arms" assault, ravish and carnally know a female 'wilfully, unlawfully and feloniously . . . and against her will."

There was evidence by the State, including an alleged confession of the defendant, in support of the indictment. The prosecutrix was assaulted by someone with a "crippled hand—his fingers seemed to have been drawn on one hand"—on the night of 24 December, 1945, as she was walking along a wooded path near her daughter's home in Hamlet. She made outcry as soon as she was able to free herself and reach her daughter's house. Officers were called and found evidence of a struggle and the prosecutrix' pocketbook where the assault took place. A doctor was also called who found the prosecutrix in a highly nervous condition, with signs of having been choked and assaulted.

Sometime thereafter the defendant was questioned by the officers and made a statement in the nature of a confession to the effect that he raped the prosecutrix on the night in question. The defendant has a crippled hand.

On trial, the defendant interposed a plea of mental irresponsibility induced by drunkenness and low mentality. He also offered evidence tending to show that he was elsewhere at the time of the assault—an alibi. The defendant did not offer himself as a witness before the jury.

The defendant excepted to the general tone of the court's charge to the jury—its strong summation of the State's case—the singling out of some of the testimony for special consideration, and particularly to the following expressions:

1. "Something has been said in the argument about the competency of the confession. . . . The court has ruled that the confession was made freely and voluntarily . . ., so any argument . . . as to the incompetency of the confession . . . will not be considered by you at all. The court has ruled that the confession as made to the officers by the defendant was freely and voluntarily made and admitted in evidence for your consideration in this case. You will take the law from the court and the court alone." Exception.

2. "Now the State further insists and contends that the prosecutrix is corroborated in her testimony . . . that she immediately ran to her daughter's home, . . . and told them immediately what had happened . . . that she didn't wait five minutes, ten minutes, an hour or two hours, or a week." Exception.

3. "The State further insists and contends that a doctor was called and that you should believe what the doctor says about it, that he was an expert witness . . . which the State insists and contends corroborates her testimony."

4. The State further insists and contends that the psychiatrist offered by the defendant substantiates rather than contradicts the State "in its contention of his (defendant's) mental capacity to be responsible for his crime . . . and if you take what the defendant's evidence shows you would say that the defendant is responsible under the law for his crime."

5. "The State further insists and contends that you should believe the officers in the case (naming them); that they have no reason to testify falsely against this man; that they are officers of the law . . . worthy of your belief and you should believe them; that if you believe what they say about it and what the defendant told them and the other evidence in the case . . . you should be satisfied . . . beyond a reasonable doubt that the defendant is guilty of the capital crime of rape."

6. "Now the defendant's counsel in their argument . . . have asked you to return a verdict of 'guilty of assault with intent to commit rape' but not to find the defendant guilty of the capital charge of rape."

The jury was given the case about 4 o'clock on Friday afternoon. On the following morning about 11 o'clock they were called in by the court and asked if they were able to agree upon a verdict. The jury answered: "No, we are pretty well divided; 7 to 5." The court then instructed the jury that it was their duty to agree if possible, saying: "The evidence as testified to by the witnesses has been rather clear and if it is at all possible you gentlemen should try to reach a verdict." Exception.

In about 30 minutes, the jury returned the verdict, "Guilty of rape as charged in the bill of indictment."

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Jones & Jones and R. O. Everett for defendant.*

STACY, C. J. The sufficiency of the indictment is challenged by motion in arrest of judgment, because it fails to allege the use of "force" in the accomplishment of the assault. *S. v. Johnson, ante,* 266; *S. c., ante,* 671. It has been decided that the words "by force," or some equivalent expression, must be used in an indictment for rape. G. S., 14-21; *S. v. Johnson,* 67 N. C., 55. Whether the instant bill is sufficient need not now be determined, since a new trial must be ordered on other grounds, and the solicitor can easily eliminate any objection by sending a new bill to the grand jury. It is desirable in criminal matters to

adhere to the established practice. Innovations usually result in prolonged litigation. *S. v. Owenby, ante,* 521.

A careful perusal of the charge invites the thought that it must have impressed the jury with the strength of the State's case and the weakness of the defendant's, especially in view of the closing admonition, "the evidence as testified to by the witnesses has been rather clear," and the result which followed immediately thereafter. *S. v. Rhinehart,* 209 N. C., 150, 183 S. E., 388; *S. v. Hart,* 186 N. C., 582, 120 S. E., 345; *S. v. Horne,* 171 N. C., 787, 88 S. E., 433. The jury could hardly have understood the court to mean that the testimony of the defendant's witnesses was "rather clear," for dual, if not discordant, pleas—insanity and alibi—were being interposed by him, and Dr. Owens, who testified in his behalf, had said on cross-examination: "I wouldn't go so far as to say he doesn't know right from wrong." The defendant did not testify before the jury. This pronouncement of the court that the evidence was "rather clear," would appear to be an invasion of the province of the twelve. *S. v. Browning,* 78 N. C., 555; *Earnhardt v. Clement,* 137 N. C., 91, 49 S. E., 49. Whether the evidence was acceptable or worthy of belief belonged to them. *S. v. Beal,* 199 N. C., 278, 154 S. E., 604. "It is only where the law gives to testimony an artificial weight that the judge is at liberty to express an opinion upon its weight." *Bonner v. Hodges* (1st syllabus), 111 N. C., 66, 15 S. E., 881.

It is the intent of the statute that the judge shall give no intimation to the jury whether a material fact has been fully or sufficiently established, it being the true office and province of the latter to weigh the testimony and to decide upon its adequacy to prove any issuable fact. *S. v. Jones,* 181 N. C., 546, 106 S. E., 817. It is the duty of the judge, under the provisions of the statute, to state in a plain and correct manner the evidence given in the case and to declare and explain the law arising thereon, without expressing any opinion upon the facts. G. S., 1-180. It can make no difference in what way or when the opinion of the judge is conveyed to the jury, whether directly or indirectly, or by the general tone and tenor of the trial. The statute forbids any intimation of his opinion in any form whatever, it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury. *Withers v. Lane,* 144 N. C., 183, 56 S. E., 855. "The slightest intimation from a judge as to the strength of the evidence or as to the credibility of a witness will always have great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by an expression from the bench which is likely to prevent a fair and impartial trial"—*Walker, J.,* in *S. v. Ownby,* 146 N. C., 677, 61 S. E., 630.

The judge may indicate to the jury what impression the evidence has made on his mind, or what deductions he thinks should be drawn there-

from, without expressly stating his opinion in so many words. This may be done by his manner or peculiar emphasis or by his so arraying and presenting the evidence as to give one of the parties an undue advantage over the other; or, again, the same result may follow the use of language or form of expression calculated to impair the credit which might otherwise and under normal conditions be given by the jury to the testimony of one of the parties. *Speed v. Perry,* 167 N. C., 122, 83 S. E., 176; *S. v. Dancy,* 78 N. C., 437; *S. v. Jones,* 67 N. C., 285.

The unusual combination of defendant's pleas—insanity and alibi—no doubt caused the repeated use of the expression "responsible for his crime." The jury, of course, was to say whether the alleged rape belonged to the defendant, or was "his crime."

While the disinterestedness of the officers who testified for the State, their freedom from bias and worthiness of belief were brought to the jury's attention in the form of contention that could hardly be doubted that the triers of the facts gained the impression from what was said that the judge entertained a high regard for their testimony and thought it "quite clear." *McRae v. Lawrence,* 75 N. C., 289. Also, in the same category would seem to fall the testimony of the doctor who attended the prosecutrix, for it was recited by way of contention that "he was an expert witness" and what he says "corroborates her testimony." ·

The manner of stating the contentions of the parties, if indicative of the court's opinion, is within the prohibition of the statute. G. S., 1-180; *Bailey v. Hayman,* 220 N. C., 402, 17 S. E. (2d), 520. "There must be no indication of the judge's opinion upon the facts, to the hurt of either party, either directly or indirectly, by words or conduct." *Bank v. McArthur,* 168 N. C., 48, 84 S. E., 39.

The *lapsus linguæ* or misstatement to the jury, if such it were, that defendant's counsel had asked them to return a verdict of "guilty of assault with intent to commit rape," rather than one of rape, should have been called to the court's attention at the time. *S. v. McNair, ante,* 462. Ordinarily, standing alone, this would perhaps amount to no more than a harmless inadvertence. In the instant case, however, it may have given color and tone to the court's charge, especially in the light of the prior references to the voluntariness of the confession.

We are inclined to the view that the defendant is entitled to another hearing. *Reel v. Reel,* 9 N. C., 63. It is so ordered. ·

New trial.