STATE OF NORTH CAROLINA v. SAMUEL LEE JACKSON

No. 83A81

(Filed 5 October 1982)

1. **Criminal Law § 66.4— charges dismissed—no right to lineup**

   Defendant had no right under G.S. 15A-281 to demand a lineup when the State had taken a voluntary dismissal of the charges against him.

2. **Criminal Law §§ 66.12, 66.17— confrontation in hall near courtroom—no taint of photographic and physical lineups—independent origin of in-court identification**

   A "confrontation" when two State's witnesses saw defendant being led in handcuffs from the lockup beside the courtroom down a hall did not taint

subsequent photographic and physical lineup identifications by those two witnesses and another witness where all of the State's witnesses testified that no suggestions were made to them by the police at the photographic display which would indicate that any one of the photographs was of defendant, and defendant's counsel was present at the physical lineup and stipulated that he observed no impropriety in the manner and method in which the identification procedure was conducted. Furthermore, even if the pretrial identification procedures had been tainted by the confrontation in the hall, defendant could not have been prejudiced thereby where the trial court made findings of fact, fully supported by the voir dire testimony, that each witness had an adequate opportunity to view defendant in good lighting and in close proximity at the time of the crime, and such findings supported the trial court's conclusion that the in-court identifications were independent in origin.

3. **Criminal Law § 99.9— questions by trial judge—ownership of money taken in robbery—no expression of opinion**

In a prosecution for armed robbery of a furniture sales center, the trial court did not express an opinion in violation of G.S. 15A-1222 in asking questions attempting to clarify the testimony of a salesman at the center concerning the ownership of money taken from his possession during the robbery since proof of ownership was not essential to establish robbery, and the questions in no way intimated the trial judge's opinion regarding the witnesses credibility, defendant's guilt or a factual controversy to be resolved by the jury.

4. **Criminal Law § 141.1— special indictment charging previous conviction—inapplicability of statute**

Provisions of G.S. 15A-928(b) and (c) requiring a special indictment charging defendant with a previous conviction to be filed with the principal pleading and requiring that defendant be arraigned on the special indictment prior to the close of the State's case did not apply in this armed robbery case since the statute applies solely to cases in which the fact that the accused "has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter," G.S. 15A-928(a), and the armed robbery statute in effect at the time of defendant's arrest and conviction, G.S. 14-87(a), made no distinction between first and second offenders in terms of the punishment they might receive.

5. **Robbery § 4.1— ownership of property taken in robbery—no fatal variance**

There was no merit to defendant's contention that there was a fatal variance in an armed robbery case on the ground that the indictment charged that defendant took property belonging to the Furniture Buyers Center and the evidence showed that he took property belonging only to a salesman of that business since (1) the State was permitted to reopen its case to show that defendant stole property belonging both to the Furniture Buyers Center and to the salesman personally, and (2) it was not necessary for the State to show whose money defendant took as long as the evidence showed that the money was not defendant's own.

**6. Criminal Law § 97.1— no abuse of discretion in permitting additional evidence**

     The trial court did not abuse its discretion in allowing the State to reopen its case to present further testimony after defendant's argument to the jury.

**7. Robbery § 4.3— armed robbery—sufficiency of evidence**

     The State's evidence was sufficient for the jury in a prosecution of defendant for the armed robbery of a furniture sales business where three eyewitnesses presented a detailed account of the events which occurred at the time of the robbery and made in-court identifications of defendant; each witness testified that defendant threatened his life if he refused to tell defendant where the money was; one witness specifically stated that defendant robbed him of $1,480 and a $1,000 check; and an accomplice testified that he, along with defendant and another person, robbed the furniture sales business on the date in question by the use of a deadly weapon.

ON appeal by defendant from *Gavin, Judge,* at the 14 November 1978 Criminal Session of GUILFORD County Superior Court, High Point Division.

Defendant was charged in a bill of indictment, proper in form, with the armed robbery of Furniture Buyers Center, Inc., in High Point, North Carolina. Defendant entered a plea of not guilty.

The prior procedural history of this case is important for a proper understanding of defendant's arguments. Defendant was initially charged by warrant. He made a motion pursuant to G.S. 15A-281 requesting a lineup. Defendant's motion was granted, and the lineup was ordered to be held on 16 August 1978. This order was orally rescinded by Judge Yeattes when he learned the State intended to take a voluntary dismissal of the case on 17 August 1978. The State did dismiss the action on 17 August and no lineup was held.

After the case was dismissed in district court, defendant was led in handcuffs from the lockup beside the courtroom down the hall. One of the State's witnesses, Albert Rice, was standing in the hallway at the time and testified that he recognized defendant as he passed by.

Also on 17 August 1978, after the dismissal of the action in district court, the State's witnesses, Terrie Cecil and Mike Hughes, were taken to the High Point Police Department where they were shown a series of photographs. Both witnesses identified defendant from the fifteen pictures in the photographic display.

On 5 September 1978, the grand jury returned a true bill of indictment charging defendant with armed robbery of the Furniture Buyers Center.

At defendant's request, a lineup was held on 9 November 1978. Witnesses Cecil and Hughes immediately identified defendant. Witness Rice testified that he first marked number three but asked the officer conducting the lineup if he could change his ballot. He was given a new ballot and correctly marked defendant's number.

At trial, the State offered evidence tending to show that on 13 February 1978, at approximately 11:30 a.m., three black men entered the Furniture Buyers Center in High Point. Terrie Cecil, an employee of the Furniture Buyers Center, testified that the three black males came into the building and stood in the hallway outside her office for a few moments. They did not arouse her suspicion at that point, and she left her desk to walk back to the catalog room. One of the black men entered the catalog room and told her she was needed in her office. When she returned to her desk, everyone in the room was lying on the floor. She, too, was pushed to the floor as the black men announced they were going to rob the Center.

On voir dire she testified that she could identify defendant as one of the three black men who robbed the Center. She stated that she could identify him from having seen him on the day of the robbery, independent of the photographic display and lineup. She was thereafter permitted to make an in-court identification in the presence of the jury.

Another of the State's witnesses was able to make a positive identification of defendant. Mike Hughes, a furniture salesman, was present at the Furniture Buyers Center on the morning of the robbery. Hughes testified that he was in the secretary's office when he heard a commotion in the hall. He looked up from his chair to see what was happening when defendant peered through the doorway. A few seconds later, three black males burst into the office and shouted, "This is a robbery, everyone on the floor."

The court determined on voir dire that Hughes' identification was premised solely on his observations of defendant at the Furniture Buyers Center, and he was permitted to make an in-court identification of defendant.

Albert Rice, a self-employed furniture salesman who had an office at the Center, was the third witness to identify defendant as one of the robbers. He also testified that he was in the secretary's office when defendant first looked through the doorway. He complied with the robbers' demand to lie on the floor. Rice testified that defendant then grabbed him by the arm, put a gun to his head and shoved him into the office where the safe was located. The safe was open but there was no money in it. One of the robbers kicked Mr. Rice and demanded to know where the money was. When Rice told them he did not know, the robbers searched him and took from his person $1,480.00 and a check for $1,000.

On voir dire, Rice testified his identification of defendant was based solely on his observations made at the time of the alleged criminal incident. When the jury returned, Rice resumed his testimony and, like Hughes and Cecil, identified defendant as one of the perpetrators.

The State also offered the testimony of Raynard Reeves. Reeves stated that he, defendant and another black male robbed the Furniture Buyers Center on 13 February 1978. He admitted that he pled guilty to this crime pursuant to a plea bargain and received a sentence of eighty years. Reeves' testimony regarding the details of the robbery was very sketchy; he could not remember the location of the Center nor could he remember what he did after the robbery. He attributed his faulty memory to the fact that he was on heroin at the time of the robbery.

After the State rested but before defendant put on any evidence, the State was permitted to reopen its case for the purpose of having defendant plead to a special indictment alleging that he had been previously convicted of armed robbery. Defendant, out of the presence of the jury, admitted the previous conviction.

Defendant offered evidence in the nature of an alibi. Katie Jackson, defendant's mother, testified that defendant drove her to work on 13 February 1978 and that they left her home in Winston-Salem to drive to Clemmons sometime before 12:00 noon.

After defendant's argument to the jury, the State was permitted to reopen its case to present additional testimony from

Albert Rice. In clarification, Mr. Rice testified that of the money taken from him, $1,400 belonged to the Furniture Buyers Center while $80.00 and the $1,000 check belonged to him. The court asked Rice to define his relationship to the Center. He testified that he was a buyer and salesman with no ownership interest in the Center. On further questioning from the court, he stated that he was in charge of the Furniture Buyers Center on the day the robbery occurred.

The jury returned a verdict of guilty of armed robbery, and the court imposed a life sentence. Defendant gave notice of appeal. When no record had been filed on appeal after two extensions of time had been granted, Judge Washington dismissed defendant's appeal. We allowed defendant's petition for writ of certiorari on 12 January 1982.

*Rufus L. Edmisten, Attorney General, by Reginald L. Watkins, Assistant Attorney General, and Floyd M. Lewis, Associate Attorney, for the State.*

*L. Samuel Dockery, III, for defendant-appellant.*

BRANCH, Chief Justice.

We consider defendant's first and third assignments of error together since they raise related procedural and constitutional issues.

By this assignment of error, defendant initially contends that the trial judge erred in his motion to dismiss based on the State's failure to conduct the lineup as ordered by the district court on 15 August 1978. Defendant argues that the failure to hold the lineup at this time violated his statutory right to request that nontestimonial procedures be conducted.[1]

The State maintains that the voluntary dismissal of the case on 17 August 1978 obviated any necessity for the lineup. In fact, the district court order for a lineup was rescinded verbally by

---

1. G.S. 15A-281 provides that a person charged with an offense punishable by imprisonment for more than one year may request that nontestimonial identification procedures be conducted. If it appears that the results of specific nontestimonial procedures will be of material aid in determining whether defendant committed the offense, the judge to whom the request was directed must order the State to conduct the procedures.

Judge Yeattes when he was informed of the State's intention to dismiss the action. The State argues that because the charges were no longer pending against defendant and because the order had been rescinded, defendant's contentions are without merit.

The State further contends that any possible prejudice was cured when defendant was granted a lineup after the true bill of indictment was returned against him.

Defendant, however, strenuously argues that the lineup held on 9 November 1978 did not cure the prejudice engendered by the failure to hold the earlier lineup. Defendant argues the second lineup was not curative because of an alleged unlawful showup which occurred immediately after the State's dismissal of the case on 17 August.

After defendant's case was dismissed in district court, he was led in handcuffs from the lockup beside the courtroom down the corridor and was observed by the State's witnesses, Terrie Cecil and Albert Rice. Immediately after this confrontation, Cecil was taken to the High Point Police Department where she was shown a photographic lineup including defendant's picture.

Defendant argues that this confrontation in the hallway was so suggestive that it led to an irreparable mistaken identification of defendant both at the photographic lineup held that same afternoon and at the physical lineup held later on 9 November.

No mention of these identification procedures was made to the jury. Defendant nevertheless challenges the admissibility of the witnesses' *in-court* identification testimony on the ground that it is tainted by the out-of-court identification procedures conducted under constitutionally impermissible circumstances. He challenges the trial court's findings of fact and conclusions of law that each witness's in-court identification was independent of any influence other than their observations on the day of the crime.

We overrule defendant's first and third assignments of error.

[1]  First, we find no impropriety in the State's failure to hold the lineup as ordered by the district court judge on 15 August. The State, for whatever reason, decided to take a voluntary dismissal in the case. When Judge Yeattes learned of the State's intention, he properly rescinded his earlier order, finding it was

no longer necessary to proceed with the lineup. Certainly defendant has no statutory right to demand a lineup when charges are no longer pending against him.

[2] Neither do we accept defendant's contention that the so-called "confrontation" between defendant and the State's witnesses was so damaging that the photographic and physical lineups that followed were unconstitutionally tainted.

Only one of the State's witnesses, Albert Rice, actually recognized defendant as he was ushered by. Miss Cecil testified that she saw a black man for an instant out of the corner of her eye but she had no idea it was defendant. Witness Hughes was not in the corridor at the time and did not view defendant. Furthermore, only Cecil and Hughes were taken to the Police Headquarters to identify defendant from the photographs. Thus, the only witness who could reasonably have been influenced by this "confrontation" was not present at the photographic display held that same afternoon.

All of the State's witnesses testified that no suggestions were made to them by the police at the photographic display which would indicate that any one of the photographs was of defendant. Defendant's counsel was present at the physical lineup and stipulated that he observed no impropriety in the manner and method in which the identification procedure was conducted.

The trial judge specifically found that there were no unconstitutional identification procedures involving defendant. When a trial court's findings of fact are supported by competent evidence, they are binding upon this Court. *State v. Stepney,* 280 N.C. 306, 317, 185 S.E. 2d 844, 851 (1972); *State v. McVay,* 279 N.C. 428, 432, 183 S.E. 2d 652, 655 (1971); *State v. Hines,* 266 N.C. 1, 11, 145 S.E. 2d 363, 369 (1965). There was plenary evidence in the record to support the trial judge's findings that the identification procedures were free of constitutional error.

Finally, we note that even if the pretrial identification procedures had been tainted by the confrontation in the corridor, defendant could not have been prejudiced. We have consistently held that an in-court identification is competent, even if improper pretrial identification procedures have taken place, so long as it is determined on voir dire that the in-court identification is of in-

dependent origin. *State v. Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968).

The trial judge held separate voir dire examinations before admitting each witness's testimony identifying defendant as one of the robbers. The court found facts, fully supported by the voir dire testimony, that each witness had an adequate opportunity to view defendant in good lighting and in close proximity at the time of the crime. The court's conclusions, properly supported by these findings of fact, were that the in-court identifications were independent in origin.

We recognize that there must be clear and convincing evidence to support the trial court's findings that a witness's in-court identification is independent of any unconstitutional identification procedure. *State v. Yancey, supra.* The evidence in instant case meets this standard, and we are bound by the trial court's determination. *State v. Tuggle,* 284 N.C. 515, 520, 201 S.E. 2d 884, 887 (1974).

These assignments are overruled.

[3] By his second assignment of error, defendant contends that the trial court's examination of the State's witness, Albert Rice, constituted an expression of opinion in violation of G.S. 15A-1222. Defendant argues that by questioning Rice as to who owned the Furniture Buyers Center and who was in charge, the court supplied elements essential to the State's case, to-wit, ownership and control of the alleged stolen property. This argument is without merit.

*State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972), is directly on point. In *Jenerett,* the defendant was prosecuted for a homicide committed in the perpetration of a robbery. There, we held that the defendant was not prejudiced by the trial court's inquiry as to the ownership of the store where the crime occurred and the merchandise contained therein because proof of ownership was not essential to establish robbery. *Id.* at 88, 187 S.E. 2d at 740. As long as the evidence shows the defendant was not taking his *own* property, ownership is irrelevant. *State v. Spillars,* 280 N.C. 341, 345, 185 S.E. 2d 881, 884 (1972); *State v. Rogers,* 273 N.C. 208, 212-13, 159 S.E. 2d 525, 528 (1968); *State v. Lynch,* 266

N.C. 584, 586, 146 S.E. 2d 677, 679 (1966). A taking from one hav-
ing the care, custody or possession of the property is sufficient.
67 Am. Jur. 2d *Robbery* § 14 (1973).

The evidence in this case clearly indicates defendant took the
money from Rice's possession and that it was not defendant's
property. Rice testified that he was robbed of a substantial sum
of cash plus a check for one thousand dollars. It was unclear from
his testimony, however, whether the money belonged to him or to
the Furniture Buyers Center. Obviously, the trial judge was
merely attempting to clarify the witness's testimony regarding
ownership of the money.

The law is well settled that the trial court may direct ques-
tions to a witness for the purpose of clarifying his testimony.
*State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979); *State v.
Freeman*, 280 N.C. 622, 187 S.E. 2d 59 (1972). Here, the questions
in no way intimated the court's opinion regarding the witness's
credibility, defendant's guilt or a factual controversy to be re-
solved by the jury. *State v. Yellorday*, 297 N.C. 574, 581, 256 S.E.
2d 205, 210 (1979).

This assignment of error is without merit.

We elect to consider defendant's fourth and fifth assignments
of error together as they both deal with the provisions of G.S.
15A-928.

[4] We first consider defendant's contention that the special in-
dictment and notice of second offense of armed robbery were im-
properly filed and therefore should be dismissed.

G.S. 15A-928(b) provides, in part, that the special indictment
must be filed with the principal pleading. G.S. 15A-928(c) provides,
inter alia, that the defendant must be arraigned on the special in-
dictment prior to the close of the State's case. The State did not
comply with either of these statutory requirements in this case.
The grand jury returned the indictment charging defendant with
armed robbery of the Furniture Buyers Center on 28 August
1978. The notice of second offense of armed robbery was not filed
until 26 October 1978 and the special information was not filed un-
til 27 October. Furthermore, defendant was not arraigned on the
special indictment until after the State had rested its case. The
judge allowed the State to reopen for the purpose of having

defendant plead to the special indictment. Defendant claims he is entitled to a new trial because of the State's failure to comply with these portions of G.S. 15A-928.

We hold that G.S. 15A-928 does not apply in this case. The statute applies solely to cases in which the fact that the accused "has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter . . . ." G.S. 15A-928(a). Defendant's prior conviction of armed robbery did not raise the offense for which defendant was charged to one of "higher grade." *See State v. Jeffers*, 48 N.C. App. 663, 666, 269 S.E. 2d 731, 733-34 (1980). Upon proof of this previous conviction, defendant would *not* be tried for an offense carrying a higher statutory punishment.[2] The statute in effect at the time of defendant's arrest and conviction, G.S. 14-87(a), made no distinction between first and second offenders in terms of the punishment they might receive. The statute provided that upon a conviction of armed robbery, the defendant could be sentenced to imprisonment for not less than seven years nor more than life.

Thus, defendant was simply charged with the offense of armed robbery on two separate occasions. His prior conviction was *not* a statutory element to be proved by the State in this case.

Defendant also contends the trial court abused its discretion in permitting the State to reopen its case in order to arraign defendant on the special indictment.

---

2. An example of when a defendant *would* be tried for an offense carrying a heavier punishment upon proof of a prior conviction is when he is charged a second time with driving while under the influence of intoxicating liquor. G.S. 20-179. The State would be required to allege and prove the prior conviction(s) as an element of the offense in order to subject the accused to the higher penalty for second, third or subsequent offenses. *State v. Williams*, 21 N.C. App. 70, 72, 203 S.E. 2d 399, 401 (1974); *State v. White*, 246 N.C. 587, 590, 99 S.E. 2d 772, 774 (1957).

We caution the Bench and Bar that when G.S. 15A-928 does apply, the statute must be strictly followed in order to apprise defendant of the offense for which he is charged and to enable him to prepare an effective defense. Thus, the special indictment charging defendant with the previous conviction(s) of a specified offense must be filed *with* the principal pleading. Furthermore, the defendant must be arraigned upon the special indictment after commencement of the trial but *before* the close of the State's case.

The trial court has discretionary power to permit the introduction of additional evidence after a party has rested. *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980); *State v. Carson*, 296 N.C. 31, 249 S.E. 2d 417 (1978); *State v. Coffey*, 255 N.C. 293, 121 S.E. 2d 736 (1961). As stated above, the State was not required to arraign defendant on a special indictment. Although this procedure was unnecessary, we find no abuse of discretion in the trial judge's ruling. Furthermore, no evidence of defendant's previous conviction was before the jury. Thus, defendant may not claim prejudice in this regard.

In light of our holding that G.S. 15A-928 does not apply in this case, we do not deem it necessary to discuss defendant's argument that this statute forced him to testify against himself in violation of the Fifth Amendment to the United States Constitution.

By his sixth assignment of error, defendant argues that the trial court erred in denying his motion for nonsuit at the close of the State's evidence.

Defendant waived his right to assert the denial of this motion on appeal by introducing evidence on his own behalf. G.S. 15-173. Only defendant's motion for nonsuit made at the close of all the evidence is subject to appellate review.

[5] By this same assignment of error, defendant argues that his motion for nonsuit should have been granted for a fatal variance between the indictment and the State's evidence. The indictment charges that defendant took property belonging to the Furniture Buyers Center. Defendant maintains the evidence presented by the State showed that he took property belonging only to Albert Rice.

First, we note that the trial judge permitted the State to reopen its case and recall Albert Rice for further testimony. Rice's testimony made it perfectly clear that defendant stole property belonging both to the Furniture Buyers Center and to Rice personally.

Defendant, however, would not have been entitled to a dismissal of the charge against him even if this testimony had not been elicited from Albert Rice. We quote from *State v. Spillars*, 280 N.C. 341, 185 S.E. 2d 881 (1972):

> [I]t is not necessary that ownership of the property be laid in a particular person in order to allege and prove armed robbery. The gist of the offense of robbery is the taking by force or putting in fear. An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of robbery and negates the idea that the accused was taking his own property. [Citations omitted.]

*Id.* at 345, 185 S.E. 2d at 884. *See also State v. Rogers*, 273 N.C. 208, 212-13, 159 S.E. 2d 525, 528 (1968); *State v. Lynch*, 266 N.C. 584, 586, 146 S.E. 2d 677, 679 (1966).

This assignment of error is overruled.

[6] Defendant's next argument is that the trial court abused its discretion in allowing the State to reopen its case to present further testimony of Albert Rice after defendant's argument to the jury. Defendant claims Rice's testimony was prejudicial because it supplied an element of the crime charged, i.e., that defendant took property belonging to the Furniture Buyers Center.

We have decided this point adversely to defendant. It was not necessary for the State to show whose money defendant took as long as the evidence showed that the money was not defendant's own. We find the trial judge did not abuse his discretion in permitting the State to recall Albert Rice. This assignment of error is dismissed.

[7] We next turn to defendant's contention that the trial court erred in failing to grant his motion for nonsuit at the close of all the evidence. Defendant maintains his motion was improperly denied because the State did not present substantial evidence of all material elements of the offense charged. We disagree.

In ruling upon defendant's motions challenging the sufficiency of the evidence, we apply the often-repeated rule that the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences therefrom in the State's favor. *State v. Wright*, 302 N.C. 122, 126, 273 S.E. 2d 699, 703 (1981). There was sufficient evidence to repel defendant's motion for judgment as of nonsuit.

Three eyewitnesses made in-court identifications of defendant. Their testimony presented a detailed account of the

events occurring at the Furniture Buyers Center on 13 February 1978. Each witness testified that defendant threatened his life if they refused to tell him where the money was. Albert Rice specifically stated that defendant robbed him of fourteen hundred eighty dollars and a one thousand dollar check. Also, an accomplice, Raynard Reeves, testified that he, along with defendant and another black male, robbed the Furniture Buyers Center on 13 February 1978 by the use of a deadly weapon.

Finally, defendant formally assigns as error the trial court's entering and signing of the judgment. An exception to signing of the judgment entered upon defendant's conviction of armed robbery is without merit where the indictment properly charges the defendant with armed robbery, the evidence supports the judgment and the sentence is within the statutory limits. *State v. Hughes*, 8 N.C. App. 334, 174 S.E. 2d 1 (1970).

In instant case, the indictment properly charged defendant with armed robbery in violation of G.S. 14-87, the State's evidence supported the judgment, and the sentence of life imprisonment was within statutory limits. This assignment of error is overruled.

Our careful examination of this entire record reveals no error warranting that the verdict or judgment be disturbed.

No error.